IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | |
| Plaintiff/Respondent, | § § | CR. No. C-10-357 |
| v. | § | (C.A. No. C-12-191) |
| RICARDO J. RODRIGUEZ-TREVINO, | § § § | |
| Defendant/Movant. | § § | |

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO VACATE,
SET ASIDE OR CORRECT SENTENCE AND ORDER DENYING
<u>CERTIFICATE OF APPEALABILITY</u>**

Pending before the Court is Ricardo J. Rodriguez-Trevino's (Rodriguez-Trevino) motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. D.E. 87.[1] The government filed a combined response and motion to dismiss. D.E. 132. Rodriguez-Trevino filed a reply and a motion to expand the record. D.E. 97, 98. The motion to expand the record is granted. The Court additionally has before it the Affidavit of defense appellate counsel. D.E. 104. For the reasons set forth herein, the Court denies Rodriguez-Trevino's § 2255 motion. The Court also denies him a Certificate of Appealability.

**I. JURISDICTION**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

---

[1] D.E. references are to docket entry numbers in the criminal case.

## II. BACKGROUND

Rodriguez-Trevino was arrested on March 23, 2010, at the Falfurrias, Texas Border Check Point after Border Patrol Agents discovered cocaine hidden in the tires of the Mitsubishi Endeavor he was driving. D.E. 1. Rodriguez-Trevino denied knowledge of the drugs hidden in the vehicle.

Rodriguez-Trevino made his initial appearance in federal court the day after his arrest and requested appointment of counsel. D.E. 2. Counsel was appointed that day. D.E. 4.

Rodriguez-Trevino was charged in a single count indictment with possession with intent to distribute more than 5 kilograms of cocaine, approximately 29.8 kilograms, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A). D.E. 14. He was arraigned a week later. Minute Entry, April 22, 2010.

Counsel filed a motion to suppress the cocaine, Rodriguez-Trevino's statement, and all other evidence obtained as a result of the search and seizure and arrest of Rodriguez-Trevino. D.E. 24. The motion to suppress was denied. Minute Entry June 4, 2010. Trial began June 9, 2010.

The Court discussed the upcoming trial with counsel after denying the motion to suppress, including the possibility of a trial on stipulated facts, potential pitfalls regarding such a procedure, and the desire to preserve the denial of the motion to suppress for appeal. D.E. 79 at 38-43.

After the discussion, the Court recessed for an hour to allow defense counsel to confer with Rodriguez-Trevino. Id. at 43. When the Court recalled the case, defense counsel and the

government were prepared to proceed on a stipulated bench trial. June 4, 2010, ERO at 4:32:05. The Court noted that Rodriguez-Trevino was visibly upset. The Court acknowledged that Rodriguez-Trevino had a big decision to make and granted a continuance from Monday June 7 to Wednesday June 9, 2010, for jury selection. Id. at 4:33:28. Defense counsel represented he would visit with Rodriguez-Trevino over the weekend and inform the Court on Monday how they wished to proceed. The Court asked Rodriguez-Trevino if he understood what was happening and he stated that he did. Id. at 4:35:58.[2]

> The day of jury selection, the Court addressed Rodriguez-Trevino directly,
>
> 25 Mr. Rodriguez, when we were in here the other day at
> 1 the close of the Court's ruling on the motion to suppress you
> 2 became very emotional. Do you remember that?
> 3 THE DEFENDANT: Yes, sir.
> 4 THE COURT: Are you all right today?
> 5 THE DEFENDANT: Yes, your Honor.

D.E. 63 at 11-12.

At trial the government called various law enforcement agents. One of the Border Patrol agents testified that Rodriguez-Trevino demonstrated signs of nervousness at the checkpoint by holding tightly to the steering wheel and by watching his rear view mirror where a drug canine was being walked around his vehicle, rather than looking at the agent during the immigration inspection. D.E. 63 at 46-47. The canine handler asked the

---

[2] The attachments to defense counsel's affidavit confirm that he met with Rodriguez-Trevino on Saturday, June 5, 2010. The notes reflect calculation of the sentencing guideline range with possible reductions for a guilty plea and/or safety valve. See D.E. 93-4 at p. 2.

questioning agent to send the vehicle to secondary for further inspection. Id. at 47. The agent asked Rodriguez-Trevino for consent to search the vehicle and consent was granted. Id. at 49. While the search was performed, the initial agent visited further with Rodriguez-Trevino who told the agent that he traveled from Monterrey, Mexico through the Los Indios Port of Entry and was on his way to Houston for a car auction. Id. at 51-54. Rodriguez-Trevino said the only recent work done to his vehicle was a tune up two months earlier. Id. at 54.

After Rodriguez-Trevino was arrested, he was told there was contraband found in the vehicle. He was given his Miranda rights in Spanish and signed the form. He agreed to speak to the agents. Id. at 57-58. Rodriguez-Trevino appeared to be surprised when told of the cocaine in his tires. Id. at 62. When asked where he was going in Houston, Rodriguez-Trevino stated he was going to check into a hotel that night and attend an auto auction in Houston the following day. Id. He gave the agent the name of the auto auction. He was also going to contact his car dealer the next day, but he did not know the dealer's name. Id. at 63. He stated he had deposited $3000 in the car dealer's account to pay for any vehicles he bought. Id. The case was then turned over to the DEA. Id. the defense played the Border Patrol video of the stop for the jury. D.E. 64 at 7.

The canine handler, a Border Patrol Agent, testified that he and his dog Dialo were certified and maintained their training of 16 hours a month. Id. at 32-33. Dialo alerted to the rear of Rodriguez-Trevino's Mitsubishi during primary inspection. Id. at 37. After the agent was informed of anomalies in the vehicle's tires, the agent performed a systematic search of the vehicle and Dialo alerted to the right rear tire. Id. at 38. The agent measured the tire

density of the right rear tire and found it to be higher than normal. He also reviewed the x-rays and saw anomalies. Id. at 40. After that, agents removed the right rear tire, let the air out and cut into the tire. They then removed the entire tire and saw packages wrapped in electrical tape inside a device on the tire. Id. at 41. The device was a full circle of metal that was attached to the rim with bolts. Id. at 45. Devices were found on all four tires and each contained bundles of cocaine. Id. at 45-47.

The owner of Victoria Auto Sales in Fort Worth testified that he had done business with Rodriguez-Trevino from 2007 to February 2008. He worked with the defendant to help him purchase cars at auction for resale in Mexico. Id. at 99-102.

Agent Minnick of the DEA testified that she and a task force officer met with Rodriguez-Trevino after he was arrested and after he spoke to Border Patrol agents. Minnick and the Task Force Officer read Rodriguez-Trevino his Miranda rights again and he agreed to speak to them. Id. at 119-20. Agent Minnick testified that the net weight of the cocaine found in Rodriguez-Trevino's vehicle was 23.85 kilograms and was valued at over $500,000. Id. at 128-29. The purity of the cocaine was 68.1%.

Among the items seized from Rodriguez-Trevino was a business card with the name "Jerry" and a phone number written on the back of it. The number led to the owner of Victoria Auto Sales in Fort Worth. The business card was for Sam's Pack Five Star Ford in Richland Hills, Texas. Rodriguez-Trevino had a number of business cards in his wallet . He had a black Nike bag in the car that held 15 CDs, sandals, shoes, a Texas map, a bag with children's clothing from the Gap, and a light bulb. Also seized from his car were two cell

phone chargers, a garage door opener, a set of keys, toiletry items, and a pair of sunglasses. Id. at 146.

The Task Force officer testified regarding the interview with Rodriguez-Trevino. Rodriguez-Trevino told them that about a month before the trip, he left his vehicle overnight at "The Grease Monkey" to have the oil changed, tires rotated and fluids checked. Id. at 154. Rodriguez-Trevino purchased the vehicle four months before from an individual for $17,000. Id. at 155. He also told the officer that he called Jerry about two weeks before this trip to tell him he would be going to auction in Houston and would call him when he got there. Jerry told him that was fine; it would only take him a couple of hours to go from Dallas to Houston. Id. at 156. The Court took judicial notice that Richland Hills is near Dallas. The government rested. The defense did not put on any evidence.

The jury convicted Rodriguez-Trevino on the indictment. D.E. 43. The Court ordered preparation of a Presentence Investigation report (PSR). D.E. 44.

The Probation Department calculated Rodriguez-Trevino's base offense level to be 34 based upon the quantity of drugs seized. D.E. 46 at ¶ 11. He had no criminal history. Id. at ¶ 23. The sentencing range was 151-188 months, with a minimum sentence of 10 years. Id. at ¶¶ 33-34. Counsel filed a Sentencing Memorandum and requested a downward variance. D.E. 49. There were no objections to the PSR. D.E. 48.

Sentencing was held in August 2010. The Court asked about safety valve. Defense counsel responded that he had explained safety valve to Rodriguez-Trevino who elected not to participate in order to preserve his appellate rights. D.E. 65 at 4. Defense counsel

requested a downward departure based on Rodriguez-Trevino's lack of criminal history, his background and education, and his family, including his support for his children. The Court sentenced Rodriguez-Trevino to 151 months in the custody of the Bureau of Prisons, supervised release of 5 years, a $1000 fine, and a special assessment of $100. Id. at 10. Judgment was entered on the docket on August 26, 2010. D.E. 50.

Rodriguez-Trevino timely appealed. D.E. 53. The Fifth Circuit affirmed the denial of his motion to suppress. D.E. 85. Rodriguez-Trevino filed his timely motion to vacate pursuant to 28 U.S.C. § 2255. D.E. 87.

### III. MOVANT'S CLAIMS

Rodriguez-Trevino complained that counsel was ineffective on the grounds that he failed to communicate multiple plea offers from the government to Rodriguez-Trevino and failed to allow the district court to address the issue of safety valve. D.E. 87 at p. 2, 6. He supplemented these claims with additional filings, including his affidavit. D.E. 89, 90. Rodriguez-Trevino claims he was first offered a plea agreement for four years and later an agreement for 6 years. D.E. 89 at p. 5. He also claimed that counsel failed to file a motion to suppress based upon lack of probable cause. D.E. 89 at p. 8. In his Affidavit, Rodriguez-Trevino claims he told his attorney that he wanted to plead guilty on June 4, 2010, after the pretrial conference and the denial of his motion to suppress. D.E. 90 at ¶ 5. He claims that from the beginning, he did not want to go to trial because of his concern over the evidence–the drugs found in his vehicle. Id. at ¶ 3. He claims he would have accepted a plea

agreement. Id. at p. 2. Rodriguez-Trevino requested that this Court address the motion to suppress issue after the Supreme Court decides Florida v. Harris. Id. at 8.

The government responds that Rodriguez-Trevino's claims are without merit.

## IV.   ANALYSIS

### A.   28 U.S.C. § 2255

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: 1) constitutional issues, 2) challenges to the district court's jurisdiction to impose the sentence, 3) challenges to the length of a sentence in excess of the statutory maximum, and 4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992).

**B.** **Ineffectiveness of Counsel**

    1.    *Standard for claims of ineffective assistance*

Generally, an ineffective assistance claim presented in a § 2255 motion is properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. Id. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. United States v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001). To show that his attorney's performance at sentencing in a noncapital case was prejudicial under Strickland, the movant must demonstrate that counsel's error led to an increase in the length of his imprisonment. Glover v. United States, 531 U.S. 198, 203 (2001); United States v. Herrera, 412 F.3d 577, 581 (2005).

If the movant fails to prove one prong, it is not necessary to analyze the other. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

2. *Failure to communicate plea offers*

Rodriguez-Trevino's original § 2255 filing stated, "Petitioner avers that counsel was ineffective for failing to address in a timely manner that the prosecution, not once, but twice, offered a plea agreement deal to counsel. Counsel at no time during pretrial proceedings put on notice petitioner of this plea negotiations . . . ." D.E. 87 at p. 2. He then states, "This scenario was outlined for the first time to petitioner through his appeals attorney Mr. Jonathon Seagert." Id. The Court ordered Rodriguez-Trevino to file an affidavit providing additional information. In his "Affidavit," Rodriguez-Trevino claims that his appellate counsel discovered three proposed plea agreements, one that Rodriguez-Trevino signed and two others Rodriguez-Trevino had never seen. D.E. 90 at ¶ 10. In his supplemental filing, Rodriguez-Trevino claims that one plea offer was for a term of four years imprisonment; a second offer was for six years imprisonment. D.E. 89 at p. 5.

The document that Rodriguez-Trevino filed as his affidavit is not sworn. His signature is notarized, but the notary only confirmed his identity. The "affidavit" is not signed under penalty of perjury, but states it is made "of his own free will and to the best of his recollection." D.E. 90 at p. 3.

Appellate counsel provided an affidavit at the Court's request. D.E. 104. That affidavit does not support Rodriguez-Trevino's assertions that there were plea offers, "At no point in

my representation did I become aware of any legitimate plea bargain offer for a set number of years that was made by the government for Mr. Rodriguez-Trevino's behalf." Id. at p. 3.

Rodriguez-Trevino's assertions are based upon what his appellate attorney, allegedly told Rodriguez-Trevino's mother and she told Rodriguez-Trevino.[3]

Rodriguez-Trevino claims he wanted to plead guilty all along and conveyed that sentiment to counsel on June 4, 2010, at a meeting after the motion to suppress was denied. Id. at ¶ 5. He further claims that "he would have signed a plea agreement had it been presented and explained and never gone to trial." Id. at p. 2. In support for his claim, he presented his mother's affidavit in which she claims that a plea offer was made, that counsel discussed it with Rodriguez-Trevino and Rodriguez-Trevino told counsel to go forward with trial. D.E. 98 at p. 6. Bertha Trevino does not state that she ever spoke to appellate counsel.

"[A]s a general rule, defense counsel has the duty to communicate formal offers from

---

[3] While [appellate counsel] Mr. Seagert was researching my case to prepare an appeal, he discovered that there had been plea agreement(s). One which I had signed and two others which I had never seen. *Mr. Seagert talked with my mother to get a better understanding of the events surrounding my arrest and my case. This is how I came to know about the plea agreement* and that Mr. Vela had kept it to himself and just persuaded me to go to trial. These facts were all outlined in the direct appeal.

Honestly, *I never had a chance to talk with Mr. Seagert personally about the two other plea agreements, but he did talk with my mother* about the matter. I am sure he would have no problem addressing the Court concerning these agreements if allowed.

D.E. 90 at ¶¶ 10, 12 (emphasis added).

11

the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Missouri v. Frye, — U.S. ----, 132 S.Ct. 1399, 1408 (2012); accord United States v. Havens, 450 Fed. App'x 363, 364 (5th Cir., Nov. 16, 2011) (per curiam) (designated unpublished) ("We have held that 'failing to inform the defendant of a plea offer could amount to ineffective assistance of counsel.'"). "When defense counsel allowed the offer to expire without advising the defendant or allowing him to consider it, defense counsel did not render the effective assistance the Constitution requires." Frye, 132 S.Ct. at 1408. In Frye, there was no dispute over whether a plea agreement had been offered or its terms. See id. at 1404. Here, the first issue is whether there was a plea offer.

Defense counsel states in his affidavit that "I do not remember if any specific offers were made." D.E. 93-1 at p. 1. He further avers that he explained to Rodriguez-Trevino the following options: going to trial, a conditional plea of guilty to preserve the motion to suppress, or pleading guilty. Id. He attached several exhibits to his affidavit which demonstrate various calculations of the sentencing guidelines, including acceptance of responsibility and safety valve. Counsel claims he reviewed these calculations with Rodriguez-Trevino. Id. at 1-2. Also attached to Counsel's affidavit are copies of letters to the facility where Rodriguez-Trevino was held to schedule conferences with Rodriguez-Trevino.

The Court ordered the government to file an affidavit regarding plea discussions with counsel. The affidavit by AUSA Hess states that he did not "recall ever discussing a plea agreement with any of defendant's attorneys." D.E. 100 at ¶ 2. He further states that if he did have such a discussion, it would have been regarding the standard plea agreement for

12

maximum acceptance of responsibility and a recommendation of a within guideline sentence. Id. AUSA Hess goes on to state that he did not prepare any formal written plea agreements, nor did he make any plea offer after the ruling on the motion to suppress. Id. at ¶¶ 2, 4.

Although Rodriguez-Trevino's original filing was sworn, it is clear from it that his claim regarding plea discussions was not based upon his personal knowledge, but upon statements made to him by his appellate counsel. Rodriguez-Trevino's subsequent unsworn statement and unsworn supplemental filing contradict other evidence in the record. Rodriguez-Trevino claims that he was told by his mother, who was told by his appellate counsel, that three plea agreements existed, including one that he signed. The parties to any plea discussions, defense counsel and AUSA Hess, do not recall plea discussions and AUSA Hess denies preparing any written plea agreement. Furthermore, this Court notes that Rodriguez-Trevino's claim that he was offered plea agreements with specific sentences of four and six years is suspect. Rodriguez-Trevino had little to no opportunity to obtain a sentence of 4 or 6 years in this case in which the minimum statutory sentence was 10 years imprisonment. Rodriguez-Trevino's claim that he was offered two plea agreements for specific sentences that were substantially below the minimum statutory sentence is improbable.

No evidentiary hearing is necessary in this case. Rodriguez-Trevino has no personal knowledge of the existence of any plea discussions. Moreover, his unsworn allegations cannot be used to overcome the other evidence in the record that no written plea agreement was ever prepared by the government and no plea discussions were held after the motion to suppress was denied. Unsworn allegations may not be used to create a fact issue in these cases. United States v. Gonzalez, 493 Fed. App'x. 541, 544 (5th Cir., Oct. 2, 2012) (per curiam) (designated unpublished).[4] Additionally, the documentary evidence and the record of proceedings militate against Rodriguez-Trevino's claims. It was Rodriguez-Trevino's decision whether to go forward with trial or to plead guilty and whether to debrief. His statements to the Court at the final pretrial conference on June 4, 2010, and again at sentencing did not suggest any conflict between him and his counsel as to whether to proceed to trial. Although, contested fact issues in a § 2255 case "may not be decided on affidavits alone," when the affidavits are supported by other evidence in the record, as here, no fact

---

[4] In light of Lafler and Frye, we conclude that Gonzalez's unsworn allegations, in addition to his counsel's letter attached to the § 2255 motion that Gonzalez did not sign under penalty of perjury, are insufficient to create a factual issue regarding whether Gonzalez was denied his constitutional right to effective assistance of counsel. The record does not contain independent indicia of the likely merit of Gonzalez's unsworn allegations that counsel failed to inform him of any plea offer or to provide him with accurate advice regarding his sentencing exposure. See United States v. Lghodaro, 967 F.2d 1028, 1030 (5th Cir. 1992) (affirming that a defendant's unsworn allegations do not bear sufficient indicia of reliability to be considered by the court). Gonzalez's unsworn allegations cannot overcome the DEA Agent's sworn affidavit and other evidence proffered by the government.

Id. at 544.

issue is presented that requires a hearing. See United States v. Hughes, 635 F.2d 449, 451 (5th Cir. 1981).

The Court finds that Rodriguez-Trevino has not met his burden to demonstrate that there was any plea agreement offered. In light of the entire record, no deficient conduct by counsel is shown as to this claim. Carter, 131 F.3d at 463 ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

3.   *Counsel's failure to allow the Court to address safety valve*

During sentencing, the Court asked counsel if Rodriguez-Trevino debriefed for purpose of safety valve. Counsel responded that Rodriguez-Trevino had opted to preserve his right to appeal and chose not to take advantage of the opportunity. Rodriguez-Trevino's claim that counsel's alleged failure to allow the Court to pursue the issue constitutes ineffective assistance of counsel.

On this issue, Counsel's affidavit references notes from his meeting with Rodriguez-Trevino on July 18, 2010, in which counsel explained safety valve and the appellate process. Counsel stated that Rodriguez-Trevino decided that he wished to proceed on appeal and not potentially waive his appeal by debriefing. D.E. 93-1 at p. 2. The referenced notes were not attached to counsel's affidavit. However, at sentencing, defense counsel made the same representation to the Court.[5] The Court asked Probation for the sentencing range with

---

[5] 5 THE COURT: Has your client evaluated his likelihood
6 of success on appeal with the benefits that the Government
7 might recommend to the Court for sentencing for safety valve
8 disclosures or for 5-K.
9 MR. VELA: Your Honor, we did not discuss, as far as

application of safety valve and was advised it would be 121-151 months imprisonment. Id.

at 9. The Court then asked Rodriguez-Trevino what he would like to say,

> 19 THE COURT: I don't have that recommendation [safety valve] from the
> 20 United States or from Probation. And at least that portion of
> 21 it is within your own client's hands. And partly in mine. Do
> 22 you have anything that you'd like to say, Mr. Rodriguez about
> 23 your case or in mitigation of your sentence?
> 24 THE DEFENDANT: Well, first of all I would like to
> 25 thank the Court for allowing me to have my case seen by the
> jury. And to thank the Court to you and all of your team for
> 2 all of your attention. And to tell the Court that if the Court
> 3 could help me in any way that I would be grateful.

Id. at 9-10.

Rodriguez-Trevino had the opportunity to ask the Court for time to debrief, but he did not. Instead, he thanked the Court for his jury trial. In light of this exchange and the other evidence before the Court, the Court finds that Rodriguez-Trevino has not met his burden to demonstrate that counsel's performance was deficient. See Carter, 131 F.3d at 463.

---

> 10 what the Government is concerned, we did not discuss option
> 11 such as waiver of appeal. I did, however, discuss --
> 12 THE COURT: Well, I didn't say anything about waiver
> 13 of appeal.
> 14 MR. VELA: I did --
> 15 THE COURT: If I did, I didn't mean to.
> 16 MR. VELA: I did discuss with my client the --
> 17 THE COURT: I just said has he evaluated the
> 18 likelihood of success on appeal?
> 19 MR. VELA: We've talked about that, your Honor. I've
> 20 explained to him his options, explained to him what issues we
> 21 have on appeal, and that nothing is guaranteed.

D.E. 65 at 8.

## C.     Motion to Suppress

Rodriguez-Trevino asked this Court to delay ruling on his § 2255 motion until after the Supreme Court decided <u>Harris v. Florida</u>, in which the issue of probable cause arising from a trained drug dog's alert was raised. — U.S. ----, 133 S.Ct. 1050 (2013). The <u>Harris</u> Court decided that a properly trained and certified drug dog's alert may provide sufficient indicia of probable cause. <u>Id.</u> at 1057. That case was decided on February 19, 2013.

This Court denied Rodriguez-Trevino's motion to suppress on June 4, 2010. The issue was raised on appeal and the Fifth Circuit affirmed this Court's ruling. D.E. 85. Because this issue has been previously raised and decided by the Fifth Circuit, it may not be revisited in this proceeding. <u>United States v. Kalish</u>, 780 F.2d 506, 508 (5th Cir. 1986) ("It is settled in this Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 Motions.").

## V.     CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Rodriguez-Trevino has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, § 2255 Rules.

A COA "may issue. . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment

of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Rodriguez-Trevino is not entitled to a COA on any of his claims. That is, reasonable jurists could not debate the Court's resolution of his claims, nor do these issues deserve encouragement to proceed. See Jones, 287 F.3d at 329.

## VI. CONCLUSION

For the foregoing reasons, Rodriguez-Trevino's motion to expand the record (D.E. 98) is GRANTED, his motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 87) is DENIED. He is also denied a Certificate of Appealability.

Ordered this 6th day of November 2013.

*/s/ Hayden Head*
HAYDEN HEAD
SENIOR U.S. DISTRICT JUDGE